UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| UNITED STATES, | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 1:19-cv-04258-JRS-DML |
| | ) | |
| HEALTHNET, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| ——————————— | ) | |
| | ) | |
| JUDITH ROBINSON, | ) | |
| | ) | |
| Relator. | ) | |

**Order on Motions to Dismiss and Motion to Enforce Settlement Agreement**

*Qui tam* Relator Judith Robinson ("Relator") brings claims, on behalf of the United States and the State of Indiana, against Defendant HealthNet, Inc. ("HealthNet") for violations of the False Claims Act ("FCA"), 31 U.S.C. § 3729 *et seq.*, and the Indiana False Claims and Whistleblower Protection Act ("IFCA"), Ind. Code § 5-11-5.5-1 *et seq.* On May 4, 2020, Indiana filed its Complaint-in-Intervention. (ECF No. 17.) Before the Court are two motions. Indiana moves to dismiss Count III of Relator's Amended Complaint under Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction. (ECF No. 42.) HealthNet moves to dismiss Count II and Count III of Relator's Amended Complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. (ECF No. 55.) Relator moves to enforce a settlement agreement. (ECF No. 61.) For the following

1

reasons, the motions to dismiss are granted and the motion to enforce is denied. A joint motion, (ECF No. 77), concerning settlement between Indiana and HealthNet and opposed by Relator, will be addressed in a separate order in due course.

## I.    Background

This case arises out of *United States of America & Indiana ex rel. Robinson v. Indiana University Health, Inc. & HealthNet, Inc.*, No. 1:13-cv-2009-TWP-MJD (S.D. Ind. 2013) ("*Robinson I*").[1]   In *Robinson I*, Relator alleged that HealthNet utilized certified nurse midwives rather than physicians to treat patients with high-risk pregnancies, against Indiana Medicaid rules. (*Robinson I* Compl. ¶¶ 32–42, ECF No. 1, No. 1:13-cv-2009-TWP-MJD.)   Relator additionally alleged that HealthNet submitted claims for patient encounters even though there were no face-to-face encounters between a patient and a physician as required by Medicaid, (*Robinson I* Am. Compl. ¶¶ 90–97, ECF No. 38, No. 1:13-cv-2009-TWP-MJD), including submitting claims for wrap-around payments for ultrasound readings without face-to-face visits, (*Robinson I* 2nd Am. Compl. ¶¶ 88–94, ECF No. 162, No. 1:13-CV-2009-TWP-MJD).

On April 27, 2017, the United States, Indiana, Indiana University Health, Inc. ("IU Health"), and HealthNet ("*Robinson I* parties") executed a settlement in *Robinson I*. (*See* Mot. Dismiss, Ex. A, ECF No. 18-1.) The parties, except for Indiana,

---

[1] The Court takes judicial notice of the *Robinson I* docket.   Judicial notice does not convert a motion to dismiss to a motion for summary judgment. *See Anderson v. Simon*, 217 F.3d 472, 474–75 (7th Cir. 2000) ("In ruling on a 12(b)(6) motion, a district court may take judicial notice of matters of public record without converting the 12(b)(6) motion into a motion for summary judgment.").

which was not a party because it declined to intervene, subsequently moved to dismiss the action with prejudice under Federal Rule of Civil Procedure 41(a) except as to the HealthNet wrap-around claims for the period of 2011 to 2015, for which they sought dismissal without prejudice. (Joint Mot. to Dismiss, ECF No. 266, No. 1:13-cv-2009-TWP-MJD.) Indiana consented to the voluntary dismissal. (Consent to Dismissal by Indiana, ECF No. 267, No. 1:13-cv-2009-TWP-MJD.) On May 4, 2017, the *Robinson I* court dismissed all claims with prejudice as to Relator, the United States, and Indiana, except for the claims regarding the HealthNet wrap-around claims for the period of 2011 to 2015, which were dismissed without prejudice to the same parties. (*See* Order, No. 13-cv-2009-TWP-MJD, ECF No. 268). The *Robinson I* Settlement Agreement provides for the payment of $18,000,000 to the United States and Indiana by IU Health and HealthNet, and a payment of $4,952,000 by the United States and Indiana to Relator. (*Robinson I* Settlement Agreement ¶¶ 1–5, ECF No. 18-1.) When the settlement was reached, the specific value of the HealthNet wrap-around claims from 2011 to 2015 had not been determined. (Entry, 1–2, No. 1:13-cv-2009-TWP-MJD, ECF No. 294.)  In March of 2018, Indiana completed its reconciliation process and determined the wrap-around claims to be worth $1,454,541.91. (*Id.* at 2.)

On June 11, 2019, Relator sought to reopen *Robinson I* "for the purpose of determining the appropriate party or parties to pay the relator's share award to Relator." (Mot. to Reopen, 2, No. 1:13-cv-2009-TWP-MJD, ECF No. 289.) Relator asserted that "the parties [were] finally prepared to reach settlement related to [her]

allegations regarding the claims for wrap-around payments that HealthNet submitted for ultrasound reads without a face-to-face patient visit." (*Id.* at 1.) Judge Dinsmore denied Relator's motion to reopen *Robinson I* because the court had not retained jurisdiction over the HealthNet wrap-around claims, which had already been dismissed without prejudice under Federal Rule of Civil Procedure 41(a). (Entry, 2, No. 1:13-cv-2009-TWP-MJD, ECF No. 294.)

On October 17, 2019, Relator commenced the instant action ("*Robinson II*"), and on March 2, 2020, she amended her complaint ("*Robinson II* Amended Complaint"), realleging, in Counts I and II, the HealthNet ultrasound wrap-around claims from 2011 to 2015, as well as alleging that HealthNet double billed ultrasound reviews and encounters, that HealthNet billed Depo-Provera birth control injections without face-to-face encounters, and that HealthNet double billed Medicaid for Depo-Provera injections in violation of the FCA and the IFCA, (*see Robinson II* Am. Compl. ¶¶ 28–29, 48, 54, ECF No. 9.) Count III alleges that Relator and HealthNet reached an oral settlement agreement whereby HealthNet would waive its claims for the Federally Qualified Health Center ("FQHC") wrap-around reimbursement. (*Robinson II* Am. Compl. ¶ 38, ECF No. 9 at 14.) In furtherance of the agreement, Relator alleges that she and HealthNet agreed to dismiss the wrap-around claims without prejudice while the value of the claims was being reconciled. (*Id.* ¶ 39, ECF No. 9 at 14.) Indiana and the United States allegedly agreed to the terms of the agreement. (*Id.* ¶ 41, ECF No. 9 at 14.) HealthNet and Relator each received consideration, with Relator's consideration being that she was assured she would receive $399,999.02, which

4

represents a 27.5% recovery of the amount of the reconciliation.  (*Id.* ¶¶ 39–40, ECF No. 9 at 14.)  Relator requests that the Court use its equitable powers to enforce the terms of the oral settlement agreement and order the government to pay her the relator's share.  (*Id.* at 18.)

On May 4, 2020, Indiana filed its Complaint-in-Intervention, in which it intervened as to Count II of the Amended Complaint.  (ECF No. 17.)  On May 12, 2020, Indiana moved to dismiss all of Relator's claims in Count I and Count II, other than the HealthNet wrap-around claims for the period from 2011 to 2015, and all the pre-October 17, 2013, claims in Count I and Count II.  (ECF No. 18).  Relator did not oppose Indiana's partial motion to dismiss, which the Court granted, dismissing with prejudice all claims alleged in Counts I and II, except the HealthNet wrap-around claims for the period from October 18, 2013, to 2015 as barred by the statute of limitations or precluded by *res judicata*.  (Entry, ECF No. 38.)  This left surviving the HealthNet wrap-around claims for the period of October 18, 2013, to 2015 (Counts I and II), and the request for specific performance of the purported oral settlement agreement (Count III).  (ECF No. 38 at 2.)

## II.   Legal Standard

To survive a motion to dismiss for failure to state a claim, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009). Thus, a "plaintiff must do better than putting a few words on paper that, in the hands of an imaginative reader, *might* suggest that something has happened to her that might be redressed by the law." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 403 (7th Cir. 2010) (emphasis in original).

In essence, the standard for a 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction is the same as the standard for a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Ezekiel v. Michel,* 66 F.3d 894, 897 (7th Cir. 1995). In considering a Rule 12(b)(6) motion to dismiss, the Court takes the complaint's factual allegations as true and draws all reasonable inferences in the plaintiff's favor. *Orgone Capital III, LLC v. Daubenspeck*, 912 F.3d 1039, 1044 (7th Cir. 2019). The Court need not "accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). "[I]f a plaintiff pleads facts that show its suit [is] barred . . . , it may plead itself out of court under a Rule 12(b)(6) analysis." *Orgone Capital*, 912 F.3d at 1044 (quoting *Whirlpool Fin. Corp. v. GN Holdings, Inc.*, 67 F.3d 605, 608 (7th Cir. 1995)); *Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013) (on a motion to dismiss "district courts are free to consider 'any facts set forth in the complaint that undermine the plaintiff's claim'") (quoting *Hamilton v. O'Leary*, 976 F.2d 341, 343 (7th Cir. 1992)). If it grants a motion to dismiss, the Court will normally allow leave to amend the complaint unless amendment would be "futile or otherwise unwarranted." *O'Boyle v. Real Time Resolutions, Inc.,* 910 F.3d 338, 347 (7th Cir. 2018).

### III.    Indiana's Motion to Dismiss

Count III of the Amended Complaint aims to enforce a previous oral settlement agreement entered into by HealthNet to dismiss Relator's claims arising out of the FQHC wrap-around claims.  Relator seeks payment of the relator's share allegedly owed to her based on that oral settlement agreement.  She asks the Court to use its equitable powers to enforce the terms of the alleged oral settlement agreement with HealthNet, to award her a relator's share, and to order Indiana and/or the United States to pay the relator's share, costs, interest, and attorney fees.

Indiana moves to dismiss Count III of the Amended Complaint under Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction.  Specifically, Indiana argues (1) both that the Amended Complaint does not contain enough well-pleaded allegations to plausibly suggest that Relator has standing to pursue the injunctive relief sought in Count III and that there is in fact no subject matter jurisdiction, and (2) that Count III violates the Eleventh Amendment.  The Court will only discuss Indiana's first argument as that is sufficient for the Court to decide Indiana's motion.

"To establish Article III standing, a plaintiff must show (1) it has suffered an injury in fact that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015) (quoting *Friends of the Earth, Inc. v. Laidlaw Env't. Servs. (TOC), Inc.*, 528

U.S. 167, 180–81 (2000)) (internal citations omitted).  The plaintiff bears the burden of establishing the elements of Article III standing.  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

*Vermont Agency of Natural Resources v. United States ex rel. Stevens*, 529 U.S. 765, 772 (2000), holds that it is the government's injury in fact that gives a relator standing—not the relator's injury in fact, which "does not even fully materialize until the litigation is completed and the relator prevails." *Id.* at 773.  Relator, however, misunderstands the holding in *Vermont Agency* and her citation to the dissenting opinion in *Sprint Communications Co., L.P. v. APCC Services, Inc.*, 554 U.S. 269, 298 (2008) (Roberts, C.J., dissenting), is not precedential.  *See Mason v. Gate Auto. Holdings, Inc.*, 14-cv-00426, 2015 WL 134236, at *1 (S.D. Ind. Jan. 9, 2015).  The Supreme Court found "that adequate basis for the relator's suit for his bounty is to be found in the doctrine that an assignee of a claim has standing to assert the injury in fact suffered by the assignor." *Vermont* Agency, 529 U.S. at 773.  Accordingly, the Supreme Court concluded that "the *United States' injury in fact* suffices to confer standing on" the relator.  *Id.* at 774 (emphasis added); *see also Espenscheid v. DirectStat USA, LLC*, 688 F.3d 872, 876 (7th Cir. 2012) (interpreting *Vermont Agency*).

Relator has standing to bring Counts I and II as a partial assignee of the government's damages claim.  She does not have partial assignee standing to bring Count III, however.  As to Count III, her injury in fact does not materialize until the

*qui tam* action is completed and recovery is made.  At issue, then, is whether her injury in fact has materialized.

There are two types of challenges to subject-matter jurisdiction: factual and facial challenges.  *See Apex Digit., Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443 (7th Cir. 2009).  "A factual challenge contends that 'there is *in fact* no subject matter jurisdiction,' even if the pleadings are formally sufficient."  *Silha*, 807 F.3d at 173 (quoting *Apex Digit.*, 572 F.3d at 444) (emphasis in original).  "In reviewing a factual challenge, the court may look beyond the pleadings and view any evidence submitted to determine if subject matter jurisdiction exists."  *Id.*  Once evidence is proffered calling a plaintiff's standing into question, "[t]he presumption of correctness that [courts] accord to a complaint's allegations falls away . . . and the plaintiff bears the burden of coming forward with competent proof that standing exists."  *Apex Digit.*, 572 F.3d at 444 (internal citations omitted).

"In contrast, a facial challenge argues that the plaintiff has not sufficiently '*alleged* a basis of subject matter jurisdiction.'"  *Silha*, 807 F.3d at 173 (quoting *Apex Dig*, 572 F.3d at 443) (emphasis in original).  "In reviewing a facial challenge, the court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in favor of the plaintiff."  *Id.* (citing *Apex Dig*, 572 F.3d at 443–44).

Here, Indiana brings both facial and factual challenges.  The Court will only address Indiana's factual challenge, as that is sufficient to decide its motion.  Indiana argues that, even if the Court were to hold that Count III was sufficiently pleaded as to subject-matter jurisdiction, the Court in fact has no subject-matter jurisdiction.

For the following reasons, assuming *arguendo* that Relator sufficiently pleaded sufficient factual allegations to establish this Court has subject-matter jurisdiction over Count III, the Court finds that there is in fact no subject-matter jurisdiction for it to hear Count III.

A right to a relator's share is "an interest that is merely a 'byproduct' of the suit itself and cannot give rise to a cognizable injury in fact for Article III standing purposes" until the *qui tam* action is completed and recovery is made. *Vermont Agency*, 529 U.S. at 773. Indiana argues that for Relator to have a legally cognizable right to her share, she must have entered into an enforceable oral agreement with HealthNet to settle the wrap-around claims on behalf of the United States and Indiana.

State law governs a suit to enforce a settlement agreement. *Dillard v. Starcon Int'l, Inc.*, 483 F.3d 502, 507 (7th Cir. 2007). "A settlement agreement . . . is enforced just like any other contract." *Lynch, Inc. v. SamataMason Inc.*, 279 F.3d 487, 489 (7th Cir. 2002) (citing *Kokkonen v. Guardian Life Ins. Co.,* 511 U.S. 375, 380–81 (1994)). "[I]n order to be enforceable, an agreement must be sufficiently certain and definite in all of the essential terms so that a court may ascertain when and whether it has been performed." *Druco Rests., Inc. v. Steak n Shake Enters., Inc.*, 765 F.3d 776, 783 (7th Cir. 2014) (citation omitted). Under Indiana law, an oral agreement that is to be reduced to writing is enforceable, *see Wolvos v. Meyer*, 668 N.E.2d 671, 674 (Ind. 1996), but an agreement to agree is not enforceable, *see Mays v. Trump Ind., Inc.*, 255 F.3d 351, 357–58 (7th Cir. 2001).

Relator asserts that the following allegations establish the existence of the oral settlement agreement: that she and HealthNet settled the FQHC wrap-around issue by an oral agreement in which HealthNet would agree to release any claims it had for the FQHC wrap-around reimbursement from Indiana Medicaid while Myers & Stauffer determined their value; that there was consideration received by HealthNet and by Relator; that Indiana and the United States approved the terms of the agreement; and that based on HealthNet and Relator's agreement, the action was dismissed without prejudice on May 3, 2017, with Indiana's express consent. (*Robinson II* Am. Compl. ¶¶ 38–43, ECF No. 9 at 14.)  The value of the claims released was not known at the time HealthNet and Relator entered into their alleged agreement.  (*Id.* ¶ 39, ECF No. 9 at 14.)

Despite these allegations, Indiana says it is implausible an oral settlement agreement exists between Relator and HealthNet.  First, Indiana points to paragraph five of the Amended Complaint, in which Relator stated that "[o]n May 4, 2017, the [*Robinson I*] action was settled, *except for the violations regarding the FQHC wrap-around payments* . . . which claims were dismissed without prejudice, and subject to re-filing." (*Robinson II* Am. Compl. ¶ 5, ECF No. 9 at 3–4 (emphasis in original).) Indiana contends that this statement "tends to show there was no settlement agreement as alleged in Count III." (Mem. Law Supp. Mot. Dismiss 12, ECF No. 43.)

Indiana points to the *Robinson I* Settlement Agreement's integration clause. (ECF No. 18-1.)  While the *Robinson I* Settlement Agreement provided for payment of $18,000,000 to the United States and Indiana by IU Health and HealthNet, and a

payment of $4,952,000 to Relator by the United States and Indiana, (ECF No. 18-1 at 7–8), Indiana highlights that the agreement did not mention any agreement between HealthNet and Relator regarding the wrap-around claims. The *Robinson I* Settlement Agreement instead provided for the dismissal of the wrap-around claims without prejudice and contained the following integration clause:

> Except for the HealthNet CIA, or to the extent the State and HealthNet have entered into a separate settlement agreement, or as explicitly stated above, this Agreement constitutes the complete agreement between the Parties. This Agreement may not be amended except by written consent of the Parties.

(Settlement Agreement, ECF No. 18-1 at 27.) "Parties" is a defined term in the agreement and refers to the United States, Indiana, IU Health, HealthNet, and Relator. (ECF No. 18-1 at 4.) Indiana contends that this integration clause therefore tends to contradict Relator's allegations that she and HealthNet had settled the wrap-around claims.

Again, once evidence is proffered calling a plaintiff's standing into question, "[t]he presumption of correctness that [courts] accord to a complaint's allegations falls away . . . and the plaintiff bears the burden of coming forward with competent proof that standing exists." *Apex Digit.*, 572 F.3d at 444 (internal citations omitted). Relator does not point to evidence to rebut Indiana's evidence, but she instead argues that because the language of the settlement agreement specifically excludes her wrap-around claims and her share to those claims from the settlement agreement, the integration clause does not belie the existence of Relator's oral settlement agreement. However, the settlement agreement merely excludes a release of those claims, while

have other provisions that apply to them, for example, the dismissal of them.  Also, Indiana responds by pointing to evidence that shows what it believes to be another contradiction.  Indiana points to Relator's Motion to Reopen *Robinson I*, in which Relator asserted that "the parties [were] finally prepared to reach a settlement related to [her] allegations regarding the claims for wrap-around payments" and that a "settlement agreement to that effect is currently in the works." (*Robinson I* Mot. to Reopen, 1, 3, ECF No. 289, No. 1:13-cv-2009-TWP-MJD, ECF No. 289.)  Indiana argues that if Relator and HealthNet had reached an oral agreement between the time the rest of the *Robinson I* claims were settled in September of 2016 and the time she sought to reopen *Robinson I* in June of 2019, she would have clearly mentioned that oral agreement.  Omission of such detail, Indiana asserts, reduces the plausibility that an oral settlement agreement exists.

But Relator asserts there is a record of the oral settlement agreement, which she claims Judge Dinsmore made in 2019.  However, no such record was made of any oral agreement in Judge Dinsmore's July 17, 2019 Entry on Motion to Reopen Case. (Entry Regarding Mot. Reopen Case, ECF No. 294, No. 13-cv-2009-TWP-MJD.)  Relator quotes a lengthy portion of Judge Dinsmore's Entry, (ECF No. 52 at 12), but these passages in no way support her assertion that Judge Dinsmore made a record of the purported oral settlement agreement between herself and HealthNet.  In fact, Judge Dinsmore denied Relator's Motion to Reopen because the court did not retain jurisdiction over the wrap-around claims that were dismissed without prejudice under the Federal Rule of Civil Procedure 41(a).  Moreover, Judge Dinsmore wrote

that "even if the Court could exercise jurisdiction as to the settlement agreement . . . such [agreement] did not purport to resolve the wrap-around claims." (Entry Regarding Mot. Reopen Case, 3–4, ECF No. 294, 13-cv-2009-TWP-MJD.)

In total, then, Indiana's proffered evidence suggests that it is implausible there was an oral settlement with respect to the wrap-around claims. Relator has not come forward with competent proof that an oral settlement agreement exists. She therefore has not shown that she has factual standing to pursue Count III. This is because, without an oral settlement agreement, Relator does not have an interest related to injury in fact. *See Vermont Agency*, 529 U.S. at 773 ("[T]he 'right' [Relator] seeks to vindicate does not even fully materialize until the litigation is complete and the relator prevails."). Accordingly, the Court lacks subject-matter jurisdiction over Count III.

Indiana raised a factual challenge and proffered evidence calling Relator's standing into question, which dispelled the presumption of correctness the Court normally gives to a plaintiff's complaint. Namely, Indiana's evidence contradicted Relator's allegation that she made an oral settlement agreement with HealthNet to settle the wrap-around claims. Indiana's evidence showed that no settlement agreement exists and Relator failed to come forward with competent proof showing that she made an oral agreement with HealthNet to settle the wrap around claims. Therefore, the Court finds that Relator has not met her burden to show that she suffered an injury in fact and she therefore lacks standing to bring Count III.

Indiana's Motion to Dismiss is **granted** and Count III is **dismissed without**

14

**prejudice**. *See Morrison v. YTB Int'l, Inc.*, 649 F.3d 533, 535 (7th Cir. 2011) (stating that jurisdictional dismissal under Rule 12(b)(1) is without prejudice). As a result, Relator's Motion to Enforce Settlement Agreement is **denied as moot**.

## IV.   HealthNet's Motion to Dismiss

HealthNet moves to dismiss Count II and Count III of the Amended Complaint under Federal Rule of Civil Procedure 12(b)(6). With respect to Count II, HealthNet alleges that Relator fails to state a claim to relief against HealthNet because Indiana has intervened in this case and filed its own complaint, which supersedes Relator's duplicative pleading.

Count I of Indiana's Complaint-in-Intervention supersedes Count II of the Amended Complaint. Under the IFCA, a relator "may bring a civil action for a violation of [IFCA] on behalf of the person and on behalf of the state." Ind. Code § 5-11-5.5-4(a); Ind. Code § 5-11-5.7-4(a). Once the relator initiates a civil action for violation of the IFCA, "[t]he state may elect to intervene and proceed with the action . . . ." *See* Ind. Code § 5-11- 5.5-4(c); Ind. Code § 5-11-5.7-4(c). "If the attorney general . . . intervenes in an action . . . the attorney general . . . is responsible for prosecuting the action and is not bound by an act of the [relator] who initially filed the complaint." Ind. Code § 5-11-5.5-5(a); Ind. Code § 5-11-5.7-5(a). Indiana may file its own complaint-in-intervention, or it may amend the relator's complaint to include new claims or to "clarify or add detail to the claims in which the state is intervening[.]" Ind. Code § 5-11-5.7-5(a). Indiana may even settle or dismiss the action over the relator's objections. Ind. Code § 5-11-5.5-5(b)-(c); Ind. Code § 5-11-5.7-5(b)-(c).

15

Moreover, the relator's participation in the litigation may be limited to the extent her "unrestricted participation" will interfere with or delay "the prosecution of the case by the attorney general," "involve the presentation of repetitious or irrelevant evidence," or cause "undue burden or unnecessary expense[.]"  Ind. Code § 5-11-5.5-5(d); Ind. Code § 5-11-5.7-5(d).

Once the government intervenes in a *qui tam* action brought by a relator, the government's complaint-in-intervention becomes the operative complaint as to all claims in which the government has intervened, but the relator retains the right to continue as a party to the action.  *United States ex rel. Sansbury v. LB & B Assocs.*, Inc., 58 F. Supp. 3d 37, 47 (D.D.C. 2014); *see also United States ex rel. Brooks v. Stevens-Henager Coll., Inc.*, 359 F. Supp. 3d 1088, 1127 (D. Utah 2019) ("The Government's complaint superseded the relators' complaint and became the operative pleading.").

Two days after Relator filed the Amended Complaint, Indiana filed its Notice of Election to Intervene, (ECF No. 11 at 2), and  on May 4, 2020, Indiana filed its Complaint-in-Intervention, (ECF No. 17).  Like Count II of the Relator's Amended Complaint, Count I of Indiana's Complaint-in-Intervention alleges that HealthNet violated the IFCA by submitting claims to reimbursement for FQHC payments without conducting a face-to-face encounter, under Indiana Code § 5-11-5.5-2(b)(1) and § 5-11-5.5-2(b)(2).  (*See Robinson II* Am. Compl. ¶¶ 53–57, ECF No. 9 at 16–17; Ind. Complaint-in-Intervention ¶¶ 72–79, ECF No. 17 at 26–27.)

The parties seem to agree that Indiana's intervention means Relator cannot proceed on Count II. The only dispute is whether the Court should dismiss Count II, or deny the motion to dismiss as moot. Relator points the Court to *United States v. Public Warehousing Co. K.S.C.*, which holds that "the appropriate action for the Court to take when a defendant moves to dismiss those portions of a relator's complaint that have been superseded by government intervention is to deny the motion as moot as it relates to the intervened claims." 242 F. Supp. 3d 1351, 1357 (N.D. Ga. 2017). While HealthNet maintains that the Court should dismiss Count II, it acknowledges that the result is the same whether the Court denies as moot HealthNet's motion or grants it. HealthNet maintains that the Court should dismiss Count II. HealthNet points to *United States ex rel. Raggio v. Jacintoport Int'l, LLC*, where the court dismissed a relator's claims that were identical to the government's claims in its complaint-in-intervention to avoid an "undue burden or unnecessary expense . . . [given the] similarity between the two complaints." No. 10-01908, 2013 WL 2462109, at *2 (D.D.C. June 7, 2013).

Finding no Seventh Circuit precedent on this issue, the Court looks to the reasoning in each of *Public Warehousing* and *Raggio*. The court in *Public Warehousing* reasoned that although multiple parties have standing to assert the government's claims in a *qui tam* action, "the fact remains that only one claim exists." 242 F. Supp. 3d at 1357. The court therefore found that once the government intervened, its complaint was the operative complaint "as to all claims in which the government ha[d] intervened." *Id.* Importantly, the court focused on specific claims.

The court in *Raggio*, however, focused on the relator's and government's entire complaints, because the relator's and government's claims were identical in their respective complaints.  2013 WL 2462109, at *2.  Therefore, the Court found that dismissal of the relator's entire complaint was warranted.  *Id.*

Here, HealthNet focuses on a single count instead of the entire Amended Complaint because Indiana has only intervened as to Count II.  This action, then, is more similar to the situation in *Public Warehousing*.  Besides the similarities, the Court also looks to common pleading practices.  For example, if a plaintiff amends her pleading under Federal Rule of Civil Procedure 15(a)(1), the Court does not dismiss the original complaint.  Rather, the amended complaint simply becomes the operative complaint.  Similarly, in *qui tam* action in which the government does not intervene, when a relator amends his or her complaint, the amended complaint becomes the operative complaint.  *See United States ex rel. Absher v. Momence Meadows Nursing Ctr., Inc*, 764 F.3d 699, 704 n.4 (7th Cir. 2014).  The Court finds that the better practice here is to simply deny HealthNet's motion to dismiss as moot as to Count II.  Accordingly, HealthNet's motion is **denied as moot** as to Count II and **granted** as to Count III of the Amended Complaint for lack of subject matter jurisdiction as address in granting Indiana's motion.

## V.    Conclusion

Indiana's Motion to Dismiss, (ECF No. 42), is **granted**.  HealthNet's Motion to Dismiss, (ECF No. 55), is **denied as moot** as to Count II and **granted** as to Count III of the Amended Complaint.  Count I of Indiana's Complaint-in-Intervention

18

**supersedes** Count II of the Amended Complaint.  Count III of the Relator's Amended

Complaint is **dismissed without prejudice** for lack of subject-matter jurisdiction.

Relator's Motion to Enforce Settlement Agreement, (ECF No. 61), is **denied as moot**.

    **SO ORDERED.**


Date: 9/30/2021

                                          JAMES R. SWEENEY II, JUDGE
                                          United States District Court
                                          Southern District of Indiana


Distribution by CM/ECF to all counsel of record