UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| UNITED STATES ex rel. Judith Robinson, STATE OF INDIANA ex rel. Judith Robinson,<br><br>　　　　　　　Plaintiffs,<br><br>　　v.<br><br>HEALTHNET, INC.,<br><br>　　　　　　　Defendant.<br><br>JUDITH ROBINSON,<br><br>　　　　　　　Relator. | No. 1:19-cv-04258-JRS-DML |

**Entry and Order**

On October 17, 2019, *qui tam* Relator Judith Robinson ("Relator" or "Robinson") commenced this action on behalf of the United States and the State of Indiana (the "State") against Defendant HealthNet, Inc. ("HealthNet") False Claims Act ("FCA"), 31 U.S.C. § 3729 *et seq.* and the Indiana False Claims and Whistleblower Protection Act ("IFCA"), Ind. Code § 5-11-5.5-1 *et seq.*  On March 2, 2020, Relator filed her Amended Complaint, (Am. Compl.*,* ECF No. 9), alleging violations of the FCA (Count I), the IFCA (Count II), and breach of contract (Count III), which was dismissed previously.  On May 4, 2020, Indiana filed its Complaint-in-Intervention, (ECF No. 17), alleging claims under the IFCA (Count I) and the Indiana Medicaid False Claims

and Whistleblower Protection Act ("IMFCA"), Ind. Code § 5-11-5.7-1 *et seq.* (Count II).

The United States declined to intervene in this action. (ECF No. 14.) As a result, Relator maintains this action in the name of the United States.

In May 2020, the State moved to dismiss parts of Counts I and II of Relator's Amended Complaint for failure to state a claim based on *res judicata* and the statute of limitations. (ECF No. 18.) Relator consented "to dismissing the wrap-around claims prior to October 17, 2013," (Mot. to Dismiss, ECF No. 37), the Court dismissed with prejudice all claims alleged in Counts I and II of Relator's Amended Complaint except for the HealthNet wrap-around claims for the period from October 18, 2013, to 2015. (Order on Mot. to Dismiss, ECF No. 38.)

On July 12, 2021, the State and HealthNet filed a Joint Motion to Hold Proposed Settlement is Reasonable and to Dismiss Claims Brought on Behalf of the State. (Joint Motion, ECF No. 77.) First, they request the Court to determine that the State Settlement Agreement between the State and HealthNet ("Proposed Settlement") is fair, adequate, and reasonable in light of the circumstances under Indiana Code § 5-11-5.7-5(c). Second, they seek dismissal of the State's Complaint-in-Intervention with prejudice subject to the terms of their settlement agreement. Third, they ask the Court to retain jurisdiction for purposes of resolving any dispute concerning the Relator's rights to an award under Ind. Code § 5-11-5.7-6. The Proposed Settlement does not address Count I of Relator's Amended Complaint, which is brought on behalf of the United States under the FCA.

HealthNet has not received any payments for the ultrasound review claims that are the subject of this case—the "Covered Conduct" as described in the Proposed Settlement. (Proposed Settlement 2, ¶ F, ECF No. 77-1.) Under the terms of the Proposed Settlement, HealthNet will release and waive all rights and claims to those payments in exchange for the dismissal of the State's Complaint-in-Intervention, (*id.* at 3–4, ¶¶ 1–2), and the State agrees to release HealthNet from any civil or administrative monetary cause of action that the State has for any claims submitted or caused to be submitted to the State's Medicaid Program as a result of the Covered Conduct, (*id.* at 4, ¶ 3.)

The State valued the release, waiver, and discharge to the State at $155,413.58. (Proposed Settlement, 3, ¶ 1, ECF No. 77-1.) The State determined the value by starting with the amount the State proposed in a draft shared with Relator on June 6, 2018, which totaled $1,454,541.91. (Br. in Support Joint Mot. 3, 11–12, ECF No. 78; *see* ECF No. 62-3 at 32–33.) That amount was adjusted to reflect: (1) the Order dismissing with prejudice all claims alleged in Counts I and II, except the HealthNet ultrasound wrap-around claims for the period from October 18, 2013, to 2015, and taking into account the applicable Federal Medical Assistance Percentage ("FMAP") of 66.92%.[1] The Proposed Settlement is conditioned upon the Court's approval.

---

[1] More specifically, the State started with the $1,454,541.91 identified in the Relator's Amended Complaint, and subtracted:
   (1) the total claims for 2011, as identified in Relator's Amended Complaint, $343,662.63, (Relator's Am. Compl. ¶ 35, ECF No. 9), that were dismissed without prejudice due to being barred by the statute of limitations, (*see* Order, ECF No. 38);

3

On July 26, 2021, Robinson filed an Objection to State's Proposed Settlement and Dismissal of Count II. (Relator's Obj., ECF No. 79.)

On February 24, 2022, the Court held a hearing on the Joint Motion and Objection. Having heard argument and considered the briefing and record before it, the Court finds that the Joint Motion should be granted.

## Discussion

Under the IMFCA, with court approval, "the attorney general . . . may dismiss the action" after giving the person who initially filed the complaint notice and an opportunity to be heard. Ind. Code § 5–11–5.7–5(b). The court may consider the request to dismiss the action, but is not bound by it. *Id.* The attorney general "may settle the action if [the] court determines, after a hearing, that the proposed settlement is fair, adequate, and reasonable in light of the circumstances." *Id.* § 5–11–5.7–5(c). "The court may consider an objection to the settlement brought by the person who initially filed the complaint, but is not bound by this objection." *Id.*

---

(2) the total claims for 2012, as identified in Relator's Amended Complaint, $368,565.19, (Relator's Am. Compl. ¶ 35, ECF No. 9), that were dismissed without prejudice due to being barred by the statute of limitations, (*see* Order, ECF No. 38);

(3) the portion of the total claims for 2013, as identified in Relator's Amended Complaint, $348,994.91, (Relator's Am. Compl. ¶ 35, ECF No. 9), that were dismissed without prejudice due to being barred by the statute of limitations, those made on or before October 17, 2013, (*see* Order, ECF No. 38), which represents 285/365 of the annual amount or $272,502.87, leaving a remainder of $469,811.32.

Then the State took the remainder of $469,811.32 and subtracted the applicable FMAP of 66.92%, (Complaint-in-Intervention ¶ 24, ECF No. 17), or $314,397.74, to arrive at the $155,413.58 value. (Br. in Support Joint Mot. 12, ECF No. 78.)

4

In reviewing the proposed settlement and motion to dismiss, the Court looks to the FCA for guidance on reviewing the proposed settlement and motion to dismiss. *United States v. Indianapolis Neurosurgeon Grp., Inc.*, No. 1:16-cv-1778-JMS-DML, 2013 WL 652538, at *7 n.9 (S.D. Ind. Feb. 21, 2013) (stating "the Indiana FCA mirrors the Federal FCA in all respects") (citation omitted). Under the FCA, "'[i]f the Government proceeds with the action,' it assumes 'primary responsibility' for prosecuting it." *United States ex rel. CIMZNHCA, LLC v. UCB, Inc.*, 970 F.3d 835, 841 (7th Cir. 2020) (quoting 31 U.S.C. § 3730(c)(1)); *see also* Ind. Code § 5-11-5.7-5(a) (analogous provision).² However, the Relator "may continue as a party to the action," subject to certain limitations. *CIMZNHCA*, 970 F.3d at 841 (quoting U.S.C. § 3730(c)(1)).

The first limitation is the government's right to dismiss the action. The FCA allows the United States to dismiss the action over the relator's objection if the relator has been given notice and an opportunity for a hearing. *Id.* (quoting 31 U.S.C. §3730(c)(2)(A)); *see also* Ind. Code § 5-11-5.7-5(b) (like provision additionally requiring court approval). Another limitation is the government's right to settle the action over the relator's objection "if the court determines, after a hearing, that the proposed settlement is fair, adequate, and reasonable under all the circumstances." *CIMZNHCA*, 970 F.3d at 841 (quoting 31 U.S.C. § 3730(c)(2)(B)); *see also* Ind. Code § 5-11-5.7-5(c).

---

² If the Government declines to proceed with the action, the relator "shall have the right to conduct the action." *CIMZNHCA*, 970 F.3d at 841 (quoting U.S.C. § 3730(c)(3)); *see also* Ind. Code § 5-11-5.7-5(e) (analogous provision).

Further, dismissal of an action under the FCA is subject to the Federal Rules of Civil Procedure. *CIMZNHCA*, 970 F.3d at 849–51. Under Rule 41(a), "subject to . . . any applicable federal statute, the plaintiff may dismiss an action without a court order by filing a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment." Fed. R. Civ. P. 41(a)(1)(A)(i). "This right is 'absolute.'" *CIMZNHCA*, 970 F.3d at 849 (citation omitted). But Rule 41(a) "does not authorize an intervenor-plaintiff to effect voluntary dismissal of the original plaintiff's claims." *Id.* at 850. This is where the FCA picks up: "'The Government may dismiss the action' without the relator's consent if the relator receives notice and opportunity to be heard." *Id.* (quoting 31 U.S.C. § 3730(c)(2)(A)). However, the government's dismissal may not violate the relator's substantive due process or equal protection rights. *Id.* at 851–2 (citations omitted). And the dismissal may not be an attempt to perpetrate a fraud on the court. *Id.* at 852. These are "generous limits" on the government's power to dismiss, which will "be breached rarely, if ever." *Id.*

Two questions are presented for the Court's consideration: (1) whether the State is entitled to dismissal, and (2) whether the proposed settlement is fair, adequate, and reasonable in light of the circumstances.

A. *Dismissal: Notice and Opportunity to Be Heard*

The State's right to dismiss the action without Relator's consent is conditioned on Relator having been given notice and an opportunity to be heard. Ind. Code § 5-11-5.7-5(b); *see CIMZNHCA*, 970 F.3d at 850 (quoting 31 U.S.C. § 3730(c)(2)(A)). In this case, Relator received notice of the Joint Motion seeking dismissal, she was given an

6

opportunity to be heard at the February 24, 2022, hearing, and she took advantage of that opportunity. Thus, unless the State's dismissal violates Relator's substantive due process or equal protection rights, or is an attempt to perpetuate a fraud on the Court, the State has a right to dismiss, *see CIMZNHCA*, 970 F.3d at 851–2, with court approval, *see* Ind. Code § 5-11-5.7-5(b). No substantive due process or equal protection violations have been identified by Relator. Nor has any argument that the State's dismissal is an attempt to perpetuate a fraud on the Court. Therefore, the Court finds that the State is entitled to dismissal.

However, the State and HealthNet request that dismissal be subject to the terms of the Proposed Settlement and that the Court retain jurisdiction for purposes of resolving any dispute as to Relator's rights to a share. That brings the Court to the second question: whether the Proposed Settlement is fair, adequate, and reasonable under all the circumstances.

*B. Proposed Settlement: Fair, Adequate, and Reasonable Under the Circumstances*

The State argues there are several reasons for concluding that the Proposed Settlement is in the State's best interests. First, it never paid HealthNet any funds due to the Covered Conduct, and since the State has not sustained any damages, it is not entitled to a damages award. (Br. in Support Joint Mot. 6, ECF No. 78 (citing Ind. Code § 5-11-5.5-2(b) and § 5-11-5.7-2(a)).) Second, public policy weighs against assessing a monetary penalty against HealthNet who is one of the largest providers of medical services to the Medicaid recipients in the State, providing healthcare to more than 56,000 patients with a total of 300,000 patient visits per year, with many

7

patients at or below the federal poverty level and who provides full service healthcare, including pediatric, prenatal, OB delivery, behavioral health, dental, nutrition counseling, and immunizations. Any penalty would reduce the funds available to serve the underprivileged population and would not further Indiana Medicaid's mission. (Br. in Support Joint Mot., 6–7, ECF No. 78.) Third, the State considers HealthNet's release of its right to payment on the unpaid wrap-around claims to be proportionate to the gravity of the alleged misconduct. (*Id.* at 7.) The State explains that HealthNet ceased the practices described in the complaint in *United States ex rel. Robinson v. Indiana University Health, Inc.*, No. 1:13-cv-02009-TWP-MJD ("*Robinson I*") shortly after the wrap-around allegations were added to that action; HealthNet since then has not taken another $4.7 million of wrap-around payments for services other than physician-ultrasound reviews from 2011 through 2014, awaiting the State's approval in order to avoid further potential improprieties; HealthNet already paid $9 million to the United States and the State to resolve claims in *Robinson I*; and HealthNet has worked cooperatively to enter into settlements even though HealthNet disputes liability. (Br. in Support Joint Mot. at 7–8.) Finally, the State asserts that the Proposed Settlement is reasonable from an opportunity-cost perspective, citing its limited resources in the Medicaid Fraud Control Unit ("MFCU"), the MFCU's substantial number of open cases, and the time, talent, and litigation costs of trying the disputed claims in this case. (*Id.* at 8.)

Based on all these considerations, the State has determined that HealthNet's waiver of all rights and claims to the payments described in the Covered Conduct in

8

exchange for the dismissal of all claims on behalf of the State is in the State's best interest. (*Id.* at 8–9.) Relator has not challenged the reasons articulated by the State. Instead, she asserts that these same reasons existed back when she entered into a settlement with HealthNet in 2016. The Court finds that all of these considerations identified by the State support the conclusion that the Proposed Settlement is in the best interests of the State and the Hoosiers served by HealthNet.

However, as noted, Relator objects to the settlement on the grounds that it unfairly reduces her *qui tam* recovery by depriving her of a recovery she made earlier for the State on the same ultrasound wrap-around claims. Relator maintains that she entered into an agreement with HealthNet in connection with *Robinson I* in which HealthNet agreed to waive/release its claims for reimbursement of the wrap-around claims in consideration for a release of liability, and that the State approved the agreement. If Relator had such an agreement with HealthNet, she could file a lawsuit to enforce that agreement. She tried to do so in this case, but her claim to enforce an oral agreement (Count III of her Amended Complaint) was dismissed for lack of subject-matter jurisdiction. (Order on Motions to Dismiss & Mot. to Enforce Settlement Agreement, 7–15, ECF No. 80.)[3]

As the State contends, Relator, not the Proposed Settlement, reduced her potential recovery. First, Relator did not obtain a tolling agreement with HealthNet for the wrap-around claims she voluntarily dismissed without prejudice in *Robinson I*, which

---

[3] Any action to enforce an agreement would require its own independent basis for subject-matter jurisdiction. *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 378 (1994). Relator's Amended Complaint does not plead diversity jurisdiction. (*See* Am. Compl. ECF No. 9.)

9

would have preserved the wrap-around claims from January 1, 2011, through October 17, 2013. (*See* Br. in Support Joint Mot. 9–10, ECF No. 78.) Instead, the statute of limitations ran on some of the claims before Relator filed this action, and she consented to the dismissal of the ultrasound wrap-around claims prior to October 17, 2013, which claims have been dismissed with prejudice. According to the State, the wrap-around claims barred by the statute of limitations and dismissed with prejudice total $984,730.69, (see Am. Compl. ¶ 35, ECF No. 9), leaving a remainder of $469,811.32 prior to application of the applicable FMAP of 66.92%, (Br. in Support Joint Mot. 10, ECF No. 78).[4]

Second, Relator pleaded her state-law claims under the IFCA and only the IFCA; she pleaded no claims under the IMFCA. (Am. Compl., ECF No. 9; Br. in Support Joint Mot. 9–11, ECF No. 78.) The IFCA does not apply to a claim, request, demand, statement, record, act, or omission made or submitted after June 30, 2014, in relation to the Medicaid program described in Indiana Code § 12–15. *See* Ind. Code § 5–11–5.5–2 (a)(2). According to the State, the claims covered only by the IMFCA have a value of $224,753.88 ($168,565.41 + $56,188.47), prior to the application of the FMAP of 66.92%.[5] (Br. in Support Joint Mot. 11, ECF No. 78.) By omitting claims under the IMFCA, Relator reduced the basis for a relator's share under Indiana Code § 5–11–5.7–6 from $1,454,541.91 to $245,057.44 ($1,454,541.91 - $984,730.69 - $224,753.88 = $245,057.44).[6] Upon application of the FMAP of 66.92%, the basis for

---

[4] The FMAP reflects the approximately one-third funding of Medicaid claims by the federal government.
[5] $168,565.41 is for the second half of 2014; $56,188.47 is for the first two months of 2015.
[6] By the Court's math, this comes to $245,057.34 rather than $245,057.44.

10

the relator's share under Indiana Code § 5–11–5.7–6 would be $81,065.[7] (*Id.*) According to the State, if the Proposed Settlement were approved, the basis for the Relator's share would be nearly twice that amount—$155,413.58. (Br. in Support Joint Mot. 11, ECF No. 78.)

Relator argues that the Proposed Settlement violates the public policy for paying *qui tam* share awards—incentivizing insiders to report fraud on the government. She also argues that the settlement sends a message to future *qui tam* relators that the State does not honor its statutory obligations to relators, which could disincentivize future whistleblowers from coming forward. The Proposed Settlement does neither of these. Relator's own actions and omissions have reduced the basis for a relator's share. And at oral argument, the State suggested that it could have settled the claims without a relator's share but has decided that would not be fair to Relator. Instead, the State has decided to give Relator a share, indeed based on an increased basis, of what the State believes the value of the claims would have been to the State had the State paid them.

The State argues that the FMAP of 66.92% should be applied in determining the basis for a relator's share under the IFMCA. The Court agrees. This action addresses false claims presented to Indiana Medicaid.[8] Relator brought claims under both the

---

[7] Multiply the basis of $245,057.44 by 0.6692 and subtract that number ($163,992.44) from the basis to get the $81,065 share. The same result would obtain if $245,057.34 was used as the starting basis.

[8] Medicaid is jointly funded by the federal government and the participating states; participating states receive federal money to provide assistance with the medical expenses of low-income patients. 42 U.S.C. §§ 1396–1 *et seq*. The federal government reimburses states for a portion of their Medicaid expenditures based on a formula tied to each state's per capita income, the FMAP). 42 U.S.C. § 1396b(a)(1).

11

FCA and the IFCA. Because the United States has declined to intervene, she retains the right to conduct the action on behalf of the United States. 31 U.S.C. § 3730(c)(3). The State says that in a typical case, where claims have been pleaded under both the FCA and the state analog, the Medicaid recovery is split between the federal government and the state based on the FMAP, and the relator's share is paid based on the amount received by each governmental entity at a rate negotiated with each governmental entity.

Based on Relator's position that "the value of released claims is part of the settlement in determining the relator's share," (Relator's Objection to State's Proposed Settlement with HealthNet & Dismissal of Count II, 12 n.2 (citing *United States v. Thornton*, 207 F.3d 769, 771–72 (5th Cir. 2000)), ECF No. 79)), the State argues that the value of the released claims should also be allocated using the FMAP, (Br. in Support Joint Mot. 13, ECF No. 78). Since 2011, the State has not submitted a claim to the Centers for Medicare and Medicaid Services for HealthNet services, including the wrap-around claims at issue. As a result, the United States has not suffered a monetary loss or damages related to the wrap-around claims at issue in this action. (*See* United States's Resp. in Opp'n to Mot. to Enforce Settlement Agreement 3, ECF No. 65.) Further, under the Proposed Settlement, HealthNet releases the State from any and all claims for payments relating to the wrap-around claims, (Proposed Settlement, 3, ¶ 1, ECF No. 77-1); thus, the State cannot make a claim to the United States for reimbursement, (*see* United States's Resp. in Opp'n at 3–4 (asserting that because the claims at issue were determined to be fraudulent, the

State cannot and will not make a claim to the United States for reimbursement), ECF No. 65).

As a result of the Proposed Settlement, the United States has no claim to release and will have no claim in the future. Additionally, at the hearing on the Joint Motion, Relator indicated that she had advised the United States that she would dismiss Count I of her Amended Complaint brought on behalf of the United States, and the United States said it would consent to dismissal of all remaining counts. Therefore, the Court finds that the Relator's share should be based on the value to the State of the released claims and further finds that the FMAP of 66.92% should be applied to determine the basis for a relator's share.

The Court has taken Relator's objection to the Proposed Settlement into consideration. Still, the Court holds that the Proposed Settlement is fair, adequate, and reasonable in light of the circumstances. Therefore, the Proposed Settlement is approved. Moreover, the Court determines that the State is entitled to dismissal of its Complaint-in-Intervention and approves of dismissal.

## Conclusion

For the foregoing reasons, the Joint Motion to Hold Proposed Settlement is Reasonable and to Dismiss Claims Brought on Behalf of the State, (ECF No. 77), is **granted**. An appropriate order will be entered.

SO ORDERED.

Date: 3/3/2022

_____
JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

Distribution by CM/ECF to registered counsel of record